UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MITCH LAUNIUS, AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF DWIGHT GLASGOW, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:06-CV-0579-B |
| ALLSTATE INSURANCE COMPANY, | § § § | |
| Defendant. | § | |

## MEMORANDUM ORDER

This suit arises out of Allstate Insurance Company's denial of an insurance claim that its insured, Dwight Glasgow, now deceased, made on a homeowner's insurance policy for damage to his home caused by fire. Allstate claims that Glasgow himself intentionally set the blaze, and it denied coverage on that basis. Mitch Launius, as independent administrator of Glasgow's estate, filed this suit against Allstate for breach of the contract of insurance between Glasgow and Allstate and for violations of the Texas Deceptive Trade Practices Act ("DTPA") and the Texas Insurance Code. The parties have filed competing motions for summary judgment. Launius moves for summary judgment on all of his claims, and Allstate moves for summary judgment only as to the extra-contractual claims asserted against it. For the reasons explained below the Court finds that the extra-contractual claims asserted by Launius failed to survive Glasgow, and it accordingly GRANTS Allstate's motion for partial summary judgment. The Court DENIES Launius's motion for summary judgment in its entirety.

### I. Background

As the Court's resolution of the summary judgment issues presented fundamentally turns on

B

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MITCH LAUNIUS, AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF DWIGHT GLASGOW, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:06-CV-0579-B |
| ALLSTATE INSURANCE COMPANY, | § § § | |
| Defendant. | § | |

## MEMORANDUM ORDER

This suit arises out of Allstate Insurance Company's denial of an insurance claim that its insured, Dwight Glasgow, now deceased, made on a homeowner's insurance policy for damage to his home caused by fire. Allstate claims that Glasgow himself intentionally set the blaze, and it denied coverage on that basis. Mitch Launius, as independent administrator of Glasgow's estate, filed this suit against Allstate for breach of the contract of insurance between Glasgow and Allstate and for violations of the Texas Deceptive Trade Practices Act ("DTPA") and the Texas Insurance Code. The parties have filed competing motions for summary judgment. Launius moves for summary judgment on all of his claims, and Allstate moves for summary judgment only as to the extra-contractual claims asserted against it. For the reasons explained below the Court finds that the extra-contractual claims asserted by Launius failed to survive Glasgow, and it accordingly GRANTS Allstate's motion for partial summary judgment. The Court DENIES Launius's motion for summary judgment in its entirety.

### I. Background

As the Court's resolution of the summary judgment issues presented fundamentally turns on

legal questions, the Court will recite the facts of this case, which are fiercely contested by the parties, only in brief. The fire in question occurred on or about January 15, 2002[1] at a house owned by Glasgow in Dallas, Texas. (Pl. App. 30). Firefighters arrived at the scene and extinguished the fire. Damage was primarily limited to the garage area and to vehicles located in the garage and driveway. (Def. App. 3). Soon after the fire occurred Allstate engaged a fire consulting firm, Ward & Whitemore, to investigate the cause of the fire. (*Id.* at 2). David Sneed, a Ward & Whitemore consultant, conducted an investigation on February 5, 2002 and issued a report on April 1, 2002. (*Id.* at 2-7). Sneed concluded that the fire was set intentionally through the introduction and ignition of gasoline inside a 1988 Toyota Camry parked in the driveway and on top of a 1984 Oldsmobile Cutlass parked in the garage. (*Id.* at 6). The Dallas Fire Department also investigated the cause of the fire. On February 5, 2002, it issued a fire investigation report indicating that the fire was caused by an "automotive electrical short" in the Toyota. (Pl. App. 50). Allstate engaged an engineer to inspect the Toyota, but before the inspection could take place the vehicle had been towed from Glasgow's property and crushed on April 15, 2002. (Def. App. 232-33).

Glasgow filed a proof of loss claim with Allstate for damages caused by the fire in May 2002. Two years later, in May 2004, Allstate denied the claim. (*Id.* at 136). Allstate's denial letter explained that the denial was based on the evidence and information collected by Allstate indicating that the fire was intentionally set by Glasgow or someone at his direction. (*Id.*). The letter also stated that certain statements made by Glasgow violated the "concealment or fraud" provision of the

---

[1] The true date of the fire is obscured by the record. Allstate claims that it occurred on January 14, 2002. (Def.'s Brief in Supp. Mot. Summ. J. at 3). A fire consultant's report, however, states that the fire occurred on January 28, 2002. (Def. App. 2). And yet Glasgow's proof of loss form indicates that the date of loss was January 15, 2002. (Pl. App. 30).

insurance policy. (*Id.*). Glasgow died on March 14, 2005, almost ten months after Allstate's denial of the claim.

On January 13, 2006, the administrator of Glasgow's estate – Launius – filed suit against Allstate in Dallas County probate court. Launius filed an amended petition on March 2, 2006, asserting a breach of contract claim and violations of § 17.46(b) of the DTPA and § 541.060 of the Texas Insurance Code. Specifically, Launius claims that Allstate violated § 17.46(b) of the DTPA by representing "that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law." (Pl.'s Am. Pet. at ¶ 13). Launius also alleges that Allstate engaged in "unfair claim settlement practices prohibited by Section 541.060 of the Texas Insurance Code" by:

> (a) misrepresenting to a claimant a material fact or policy provision relating to coverage at issue;
>
> (b) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonable clear;
>
> (c) failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim; and
>
> (d) failing within a reasonable time to
> (1) affirm or deny coverage of a claim to a policy holder; or
> (2) submit a reservation of rights to a policy holder

(*Id.* at ¶ 14).

Allstate removed the case to this Court on March 31, 2006. The parties filed cross motions for summary judgment on January 26, 2007. Launius moves for summary judgment on all of his affirmative claims. Allstate moves for partial summary judgment only as to Launius's extra-contractual claims under the DTPA and the Texas Insurance Code. Both motions are currently ripe

for adjudication.

## II. Analysis

**A.     Summary Judgment Legal Standard**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes about material facts will preclude the granting of summary judgment. *Id.*

The burden is on the summary judgment movant to prove that no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990). If the non-movant bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. Rather, the movant may satisfy its burden by pointing to the absence of evidence to support the non-movant's case. *Id.*; *Little*, 37 F.3d at 1075.

Once the movant has met its burden, the non-movant must show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' . . . by 'conclusory allegations,' . . . by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The non-moving party must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita*, 475 U.S. at 587 (emphasis in original) (quoting FED. R. CIV. P. 56(e)). To determine whether a genuine issue exists for trial, the court must view all of the evidence in the light most favorable to the non-

movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant. *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000); *Anderson*, 477 U.S. at 248.

B.   **Survivability of DTPA and Insurance Code Claims**

Allstate argues that Launius lacks standing to bring claims under either § 17.46 of the DTPA or § 541.060 of the Insurance Code because any causes of action Glasgow may have had under those provisions were extinguished upon Glasgow's death. Neither the DTPA nor the Insurance Code make provision for the survivability of a decedent's cause of action. *See Thomes v. Porter*, 761 S.W.2d 592, 594 (Tex. App. – Fort Worth 1988, no writ); *First Nat'l Bank of Kerrville v. Hackworth*, 673 S.W.2d 218, 221 (Tex. App. – San Antonio 1984, no writ). The Texas Supreme Court has avowedly sidestepped any discussion of the survivability of DTPA damages, *see Shell Oil Co. v. Chapman*, 682 S.W.2d 257, 259 (Tex. 1984), and intermediate appellate courts in Texas are split on the issue. *Compare Lukasik v. San Antonio Blue Haven Pools, Inc.*, 21 S.W.3d 394, 402 (Tex. App. – San Antonio 2000, no pet.); *Mendoza v. Am. Nat'l Ins. Co.*, 932 S.W.2d 605, 609 (Tex. App. – San Antonio 1996, no writ); *Hackworth*, 673 S.W.2d at 221 (all holding that DTPA claims fail to survive decedent) *with Thomes*, 761 S.W.2d at 595-96; *Mahan Volkswagen, Inc. v. Hall*, 648 S.W.2d 324, 332 (Tex. App. – Houston [1st Dist.] 1982, writ ref'd n.r.e.) (both holding that DTPA claims survive decedent).

In 1992, the Fifth Circuit certified the question of the survivability of a DTPA cause of action to the Texas Supreme Court, *see Wellborn v. Sears, Roebuck & Co.*, 970 F.2d 1420, 1427 (5th Cir. 1992), yet the Texas Supreme Court has yet to put forward an answer. *See Plumley v. Landmark Chevrolet, Inc.*, 122 F.3d 308, 311 (5th Cir. 1997) (continuing to recognize split among Texas appellate courts as to the survivability of DTPA claims yet declining to reach the issue). At least one

federal court in this district has followed the decisions of the San Antonio Court of Appeals in finding that DTPA causes of action do not survive the death of the consumer. *See Kirby v. B.I. Inc.*, 2003 WL 22227694, at *16-17 (N.D. Tex. Sept. 26, 2003) (Means, J.).

Lacking any controlling authority from the Texas Supreme Court on the issue, or, for that matter, a consensus among the lower state courts, this Court must venture an *Erie* guess as to how the Texas Supreme Court would decide the question if presented with the same case. *See Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 479 (5th Cir. 2000). The Court begins this analysis by examining how the lower Texas courts have approached the survivability question. The *Thomes* and *Hackworth* opinions, though coming to different conclusions, offer the most thorough analysis and thus provide a useful starting point. Both opinions recognized that the common law provides the applicable rule of decision where, as with the DTPA, a statute fails to specifically address the survivability of a cause of action. *Thomes*, 761 S.W.2d at 594; *Hackworth*, 673 S.W.2d at 220. Where the courts differ is in their application of the common law.

The *Thomes* Court focused on the nature of a DTPA cause of action. The court noted that the DTPA is a creature of the Texas legislature and represents "an amalgam of common law fraud, contracts, and tort considerations." *Thomes*, 761 S.W.2d at 594. The court then pointed out that under the common law, actions for breach of contract and for the wrongful acquisition of property by fraud or deceit survived the death of either party. *Id.* "Applying these common law rules and liberally construing the purposes of the DTPA," the court concluded that it was "obvious that a cause of action under the DTPA *should survive* the death of the consumer." *Id.* (emphasis in original).

The *Hackworth* Court, in contrast, focused on the nature of remedies afforded by the DTPA. Its logic was straightforward. First, it recognized the basic rule under the common law that actions primarily affecting property and property rights survived the death of the aggrieved party whereas actions asserting purely personal rights did not. *Hackworth*, 673 S.W.2d at 220 (citing *Johnson v. Rolls*, 79 S.W.513, 514 (Tex. 1904)). Second, it noted that the right to recover punitive damages is a purely personal right. *Id*. Third, it found that an award of treble damages and attorney's fees, available under the DTPA, is "clearly punitive in nature". *Id*. Based on these basic premises, the court concluded that an action under the DTPA involves personal rights that, under the common law rule, do not survive the death of the consumer. *Id*. at 221.

The approach recently taken by the Texas Supreme Court with respect to the assignability of DTPA claims – an inquiry which the Supreme Court itself termed "related but sometimes distinct" to the survivability question – suggests that the Texas high court would follow the *Hackworth* tack. *See PPG Indus.*, 146 S.W.3d at 91. The *PPG Industries* Court resolved a split in the Texas appellate courts over the assignability of DTPA claims, holding that they are not assignable. *Id*. at 82. The Court first reasoned that the DTPA's primary goal is to protect consumers by encouraging them to bring their own consumer complaints, an aim which would be defeated if DTPA claims could be assigned to others, in some cases to others who might not even qualify as "consumers" under the statute. *Id*. at 84-85.

More pertinent to our present purposes, the Court also followed the same analytical path taken by the courts in *Thomes* and *Hackworth*. That is, recognizing that the DTPA is silent as to whether claims brought under that statute are assignable, the Court recurred to the basic common law principle holding that property-based and remedial claims are assignable while claims that are

personal and punitive in nature are not. *Id*. at 87. Notably, the Court acknowledged, as did *Thomes*, that the DTPA embraces many common law causes of action, including breach of contract, fraud and misrepresentation. *Id*. at 89. Unlike *Thomes*, however, the *PPG Industries* Court did not predicate the assignability of DTPA claims on whether the common law causes of action with which the DTPA overlaps could themselves be assigned. Instead, like *Hackworth*, the Supreme Court focused on the nature of the *remedies* available under the DTPA, which, it found, "generally are [] punitive rather than remedial." *Id*. at 89. The Court stated that

> the most important role of the DTPA is the remedies it *adds*, not the ones it *duplicates*. Economic damages and attorney's fees are certainly remedial, but they were recoverable in contract and warranty long before the DTPA was passed. The DTPA adds mental anguish and punitive damages – damages that could hardly be more personal.

*Id*. In the end the Court held that "the personal and punitive aspects of DTPA claims cannot be squared with a rule allowing them to be assigned as if they were mere property." *Id*. at 82. If DTPA claims cannot be assigned because of their personal and punitive attributes, then this Court fails to see how such claims can survive the death of a consumer given the common law rule holding that actions to vindicate personal rights terminate with the death of the aggrieved party. *See Hackworth*, 673 S.W.2d at 220.

It is worth noting that in making its decision the *PPG Industries* Court also looked to whether allowing the assignment of DTPA claims would increase or distort the litigation process, noting that in past cases the Supreme Court had prohibited assignments that would, among other things, skew the trial process or confuse or mislead the jury. *PPG Indus*., 146 S.W.3d at 90. Given the availability of mental anguish and punitive damages in DTPA claims, the Court found that "[j]urors are bound to experience some confusion in assessing mental anguish of a consumer, or punitive damages based

on 'the situation and sensibilities of the parties,' when the affected consumer is not a party." *Id.* (quoting *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 35 (Tex. 1994)). These same concerns are present in survivor cases given the obvious reality that a decedent cannot testify as to mental anguish suffered or to his own peculiar situation and sensibilities.

Extending the holding of *PPG Industries* to the survivor context is warranted by Texas law. Texas courts have explained that where a statute fails to specify whether claims are survivable, "the test most commonly used to determine survivability is whether or not the cause of action may be assigned." *Lindsay ex rel. Lindsay v. S. San Antonio Indep. Sch. Dist.*, 983 S.W.2d 778, 779 (Tex. App. – San Antonio 1998, no pet.) (quoting *Traver v. State Farm Mut. Auto. Ins.*, 930 S.W.2d 862, 867 (Tex. App. – Fort Worth 1996), *rev'd on other grounds*, 980 S.W.2d 625 (Tex. 1998)); *Harding v. State Nat'l Bank of El Paso*, 387 S.W.2d 768, 769 (Tex. Civ. App. – El Paso 1965, no writ). Given *PPG Industries*'s holding that DTPA claims generally cannot be assigned, it necessarily follows under the foregoing test that DTPA claims are not survivable.[2] In short, based on an extension of the Texas Supreme Court's reasoning in *PPG Industries*, and on the San Antonio Court of Appeals's decisions in *Hackworth*, *Mendoza*, and *Lukaski*, this Court believes that the Texas Supreme Court, if confronted the issues raised by this case, would find that a consumer's cause of action under the

---

[2] The Houston appellate court in *PPG Industries* recognized the connection between the assignability and survivability questions, noting that under Texas common law an action is assignable if it survives the death of the claimant. *PPG Indus., Inc. v. JMB/Houston Ctrs.*, 41 S.W.3d 270, 277 (Tex. App. – Houston [14th Dist.] 2001), *rev'd by* 146 S.W.3d 79 (Tex. 2004) (citing *Harding*, 387 S.W.2d at 769). The court then proceeded to examine the differing approaches taken by lower Texas courts with respect to the survivability issue, speaking approvingly of the decision in *Thomes*. *Id.* Following the reasoning of *Thomes*, the Houston court found that the damages provisions of the DTPA serve purposes other than punishment. *Id.* The court further analogized the DTPA claims at issue to claims for breach of express warranty and reasoned that because breach of warranty claims are assignable under the common law, DTPA claims are assignable as well. *Id.* In reversing the Houston court, the Texas Supreme Court necessarily rejected this line of reasoning.

DTPA does not survive the death of the consumer and cannot be brought by a representative of the consumer's estate.

This leaves the question of whether the same holds true for a cause of action under the Texas Insurance Code. The only case the Court has been referred to (or has found) specifically addressing the issue is *Mendoza v. American National Insurance Co.*, 932 S.W.2d 605 (Tex. App. – San Antonio 1996, no writ), which concluded that claims under the Insurance Code do not survive and cannot be brought by a representative of the decedent's estate. *Id*. at 609. In so holding the *Mendoza* Court found that the reasoning of *Hackworth* also applied to Insurance Code claims because treble damages available under article 21.21 of the Insurance Code (currently codified at § 541.060) are, like DTPA remedies, punitive in nature. *Id*. (citing *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 9 (Tex. 1991)). The Court also notes that a federal court in this district has extended the holding of *PPG Industries* to bar the assignment of claims under the Insurance Code because, as with the DTPA, "the Insurance Code remedies are personal and punitive in nature." *See Great Am. Ins. Co. v. Fed. Ins. Co.*, 2006 WL 2263312, at *10 (N.D. Tex. Aug. 8, 2006) (Sanders, J.) (also citing *Sterling*, 822 S.W.2d at 9). Therefore, following the holding of *Mendoza* and extending the holding of *Great American Insurance*, this Court concludes that any cause of action that Glasgow may have had under the Texas Insurance Code did not survive him.

C.  **Launius's Motion for Summary Judgment**

All that remains is Launius's claim that he is entitled to summary judgment on his contract claim. The Court finds that Launius's motion for summary judgment in this regard is fundamentally unsupported and fails to establish his entitlement to summary judgment as a matter of law. Fact issues abound as to whether Glasgow intentionally set fire to his home. Launius's motion for

summary judgment is therefore denied.

## III. Conclusion

For the foregoing reasons the Court GRANTS Allstate's motion for partial summary judgment. Launius's causes of action for violations of § 17.46(b) of the DTPA and § 541.060 of the Insurance Code are accordingly DISMISSED with prejudice. Launius's motion for summary judgment is DENIED in its entirety. This case will proceed to trial on Launius's breach of contract claim.

**SO ORDERED**.

**SIGNED April 17th , 2007**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE